JAMES WISER *v.* STATE OF ARKANSAS

5533                                                                459 S. W. 2d 58

Opinion delivered October 26, 1970

*Paul Jackson,* for appellant.

*Joe Purcell*, Attorney General; *Milton Lueken*, Asst. Atty. Gen., for appellee.

LYLE BROWN, Justice. Appellant James Wiser was convicted of first degree murder and the jury verdict carried the death penalty. He was alleged to have fatally shot a fourteen year old child who interrupted Wiser's attempt to ravish the child's mother. On appeal it is contended that the trial court erred in refusing to permit appellant to withdraw his plea of guilty. It is also asserted that the court declared a mistrial when the jury reported being unable to reach a unanimous verdict and that it was error thereafter to permit the jury to resume its deliberations and ultimately bring in a verdict.

Appellant initially entered a plea of not guilty and not guilty by reason of insanity. That plea was entered upon arraignment on January 27, 1970. Between that date and the day set for trial, May 11, 1970, oral and written discussions were carried on between the defense counsel and the prosecuting attorney, the subject of which was the possibility of appellant receiving a life sentence in return for a plea of guilty. It was a typical plea-bargaining procedure which, when conducted with appropriate safeguards, is accepted as conducive to "the orderly and efficient transaction of business in the criminal courts." Casenote, 23 Ark. L. Rev. 281 (1969).

When the case was called for trial, the court was informed that the defendant desired to change his pleas to that of guilty. After considerable interrogation by the court to determine whether the change in plea was voluntary and knowledgeable, the accused was permitted to make the change. A jury was impaneled to determine the degree of the homicide and to fix the punishment which, as we have said, resulted in the extreme penalty. When the jury returned with its verdict, and before formal judgment was pronounced, appellant's counsel moved to withdraw the plea of guilty on the ground that the appellant had been assured by those in authority that he would receive a life sentence. The court took

the motion under advisement and set a hearing thereon four days thereafter. On the day set for the hearing the motion was denied and appellant was sentenced to electrocution. That brings us to the first point for reversal, namely, that the court abused its discretion in denying the motion to withdraw the plea of guilty.

In the recent case of *Cross* v. *State*, 248 Ark. 553, 452 S. W. 2d 854, we recited what we termed a "summation of the basic principles" of plea bargaining:

> Where the defendant enters a plea of guilty in anticipation of a lighter sentence recommended by the state, and where the court has forewarned the defendant that it was not necessarily bound by the state's recommendation, it has been held that the court did not exert prejudicial surprise when it meted out a heavier sentence. Thus the mere fact that an accused, knowing his rights and the consequences of his act of pleading guilty, hoped or believed that he would receive a shorter sentence, a milder punishment, or some like favor by entering a plea of guilty, presents no ground for the withdrawal of the guilty plea. But . . . courts have also indicated that there is a countervailing legal principle—that the refusal to grant leave for a change of pleas from guilty to not guilty will be ruled an abuse of the trial court's discretion when it appears that the plea of guilty was based on a misapprehension of the facts or of the law, or in consequence of a misrepresentation by his own attorney, or the state's attorney, or someone else in authority. [Case note, 23 Ark. L. Rev. 281 (1969)].

We have carefully examined the correspondence between the prosecuting attorney and appellant's counsel, as well as the meticulous examination of appellant by the court before permitting a change of plea. There we find evidence which combined to create an honest belief in the mind of the appellant that he would receive a life sentence in return for a plea of guilty.

Prior to April 21, 1970, there was a discussion between the prosecutor and appellant's counsel concerning a change in plea. On the date mentioned, appellant's attorney wrote the prosecutor to this effect:

I have no authority to say that my client will enter a plea under the arrangements you discussed, however, I will take that up with them immediately and if it can be arranged I will let you know.

The prosecuting attorney responded the following day. He explained that he was meeting immediately with enforcement officers and relatives of the deceased child to discuss with them "an offer to you for an arranged plea of guilty of murder in the first degree and accept punishment of life imprisonment."

The next contact between the prosecutor and defense counsel was apparently a conversation. The prosecutor insisted that he explained that he was not permitted to negotiate on the basis of a conditional plea of guilty in return for an assurance of a life sentence; that the penalty would be fixed by the jury; and that the limit of the prosecutor's authority was to agree to recommend to the jury that a life sentence be imposed. Appellant's counsel insisted that his understanding of the agreement was that his client would enter a plea of guilty "in return for a sentence of life imprisonment."

On April 28, 1970, appellant's attorney wrote a letter to his client in which the subject of a guilty plea in return for a sentence of life imprisonment was discussed. In that letter was this statement:

Should you decide to accept this you would give up your right to a jury trial as to your guilt or innocence but *you would gain the certainty that the death penalty would not be imposed.* (Italics supplied.)

We turn next to the examination of the accused which the trial court conducted when notice of inten-

tion was made to change the plea. It consisted of three typewritten pages, was very thorough and, with but a single exception, was a commendable procedure. That single exception, which we perceive was inadvertent, was this:

> THE COURT: Do you understand what the penalty can be for a charge, a conviction of a charge of first degree murder?

> MR. WISER: Yes, sir.

> THE COURT: Of either life imprisonment or death, *if asked by the State* and found by the the jury. [Italics supplied.]

> MR. WISER: Yes.

> THE COURT: Do you understand this?

> MR. WISER: Yes.

The quoted colloquy occurred in the early stages of the questioning. It is true that the court subsequently explained that neither the court, appellant's attorney, nor the prosecutor could make the decision on punishment—that the jury alone would decide that facet of the case. Yet it is not illogical to conclude that appellant believed that subsequent explanation concerning the power to fix sentence was predicated on the condition that the State would have to ask for the death penalty. (The fact that the State does not ask for the death penalty does not deprive the jury of the right to inflict it. Ark. Stat. Ann. § 43-2152 [Repl. 1969]).

There is another factor which buttresses appellant's contention that he was to receive a sentence of life. It is not conclusive but is of some significance. The trial court, the prosecutor, and appellant's attorney proceeded on the assumption that the jury would not return the death penalty. On voir dire the jury panel was not qualified on the death penalty. The prosecutor,

questioning the jurors in groups of twos and threes, asked them if they would be agreeable to returning a verdict of life imprisonment in the event the accused was found guilty of first degree murder. He received affirmative answers. Additionally, the prosecutor in addressing the jury recommended life imprisonment. Appellant's counsel explained to one or more jurors that the State was not asking the death penalty and inquired if the jurors were willing to follow that request. The reply was favorable to appellant. The trial court candidly stated, at the hearing on the motion to withdraw the plea of guilty, that "the vagary of the jury" created the problem. We point out those elements because they show clearly that the entire trial atmosphere was that of expectation of clemency for appellant.

When all the circumstances are combined—the negotiations between prosecutor and defense counsel, the written assurance to appellant that his plea of guilty would result in life imprisonment, the court's explanation that a death verdict could be returned if requested by the State, the anticipation by the court officers that the jury would fix imprisonment at life—we think those circumstances bring the case within the "countervailing legal principle" we have heretofore quoted. Consequently we hold that the appellant's plea of guilty was based on misapprehension of the law and the facts and his motion to set it aside should have been granted.

In deference to the trial court we would be remiss if we did not make it clear that upon the hearing on the motion to withdraw the plea of guilty no one called attention to the court's statement that death could be imposed if asked by the State. Additionally, only three days intervened between the trial and the hearing on the motion; and we doubt that in the interim the record was transcribed and furnished the trial court. The court could not be expected to recall everything in his admonition to appellant unless it was called to his attention by counsel or by referring to the record.

The facts upon which the second point is based

are not likely to arise on retrial and we see no necessity in discussing it.

Reversed.